UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| MARTHA GLYN BOOKOUT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:13-CV-463 |
| | ) | (COLLIER/SHIRLEY) |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of the Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 11, 12] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 15, 16]. Plaintiff Martha Glyn Bookout seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

The Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income under the Social Security Act on April 20, 2010, alleging disability since February 28, 2010, due to chronic obstructive pulmonary disease, diabetes, left leg numbness, sleep apnea, and hypothyroid. Her applications were denied initially and upon reconsideration. The Plaintiff then requested a hearing, which was held before ALJ Joan Lawrence, in Knoxville, Tennessee, on October 20, 2011. The

1

Plaintiff was present and testified. Thereafter, the ALJ issued an unfavorable decision on December 8, 2011, finding the Plaintiff was not disabled. The Appeals Council denied the Plaintiff's request for review of that decision; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

I. **ALJ FINDINGS**

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2015.
>
> 2. The claimant has not engaged in substantial gainful activity since February 28, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: diabetes; obesity; restless leg syndrome; chronic back pain; left leg and hip pain; chronic obstructive pulmonary disease (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant can occasionally climb and balance, should avoid temperature extremes, humidity, hazards, noxious gases, fumes, and odors.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. The claimant was born on April 8, 1961, which is defined as a

younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approached advance age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 28, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 16-21].

## II. DISABILITY ELIGIBILITY

This case involves an application for DIB as well as SSI benefits. An individual qualifies for DIB if he or she: (1) is insured for disability insurance benefits; (2) has not attained retirement age; (3) has filed an application for disability insurance benefits; and (4) is under a disability. 42 U.S.C. § 423(a)(1). To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

3

death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his or her physical or mental impairment or impairments are of such severity that he or she is not only unable to do previous work but cannot, considering the individual's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which the individual lives, or whether a specific job vacancy exists for the individual, or whether the individual would be hired if he or she applied for work. §§ 423(d)(2)(B), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner

4

must prove that there is work available in the national economy that the plaintiff could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.

5

1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

IV. **POSITIONS OF THE PARTIES**

The Plaintiff argues that the ALJ erred in three respects. First, the Plaintiff maintains that the ALJ failed to consider the Plaintiff's need for a sit/stand option. [Doc. 12 at 6]. Second, the Plaintiff asserts that the ALJ's finding that the Plaintiff did not have a mental limitation is not

6

supported by substantial evidence. [Id. at 10]. Lastly, the Plaintiff contends that the Commissioner failed to develop the record both at the initial and reconsideration levels. [Id. at 16].

The Commissioner argues that the Plaintiff failed to show she had additional physical limitations than those opined by the ALJ. [Doc. 16 at 3]. Similarly, the Commissioner contends that the Plaintiff failed to prove that she had a severe mental impairment or limitation. [Id. at 9]. Finally, the Commissioner asserts that the ALJ adequately developed the record. [Id. at 14].

### V. ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

**A. Sit/Stand Option**

The Plaintiff argues that the ALJ ignored the opinions of consultant examiner Jeffery Summers, M.D., and state agency physician Christopher Fletcher, M.D., both of which opined that the Plaintiff could only be on her feet 50 minutes out of every hour, thereby requiring a sit/stand option. [Doc. 12 at 6]. Although the ALJ's decision recognizes both opinions, the Plaintiff argues that the decision fails to mention the Plaintiff's sit/stand limitation. [Id.]. In addition, the Plaintiff asserts that the decision failed to explain the weight assigned to either opinion, although the decision appears to adopt Dr. Fletcher's opinion. [Id. at 8]. The Plaintiff further contends that because a sit/stand option was required, reliance on the Medical Vocational Guidelines by the ALJ was improper at step five of the sequential evaluation. [Id.].

The Commissioner maintains that Dr. Summers' observations do not support his opinion that the Plaintiff required a sit/stand option and that the opinion appears to be based primarily on the Plaintiff's subjective complaints, which the ALJ did not find totally credible. [Doc. 16 at 6].

7

For these same reasons, the Commissioner argues that it was improper for Dr. Fletcher to rely on Dr. Summers' opinion in likewise assessing a sit/stand limitation. [Id. at 8-9]. The Commissioner also asserts that the Plaintiff's residual functional capacity ("RFC") is supported by substantial evidence because objective medical tests did not reveal any significant abnormalities, the Plaintiff received conservative treatment, and the Plaintiff's daily living activities are consistent with the ability to perform medium work. [Id. at 7-8]. Lastly, the Commissioner submits that the ALJ's failure to specify the weight assigned to Drs. Summers' and Fletcher's opinion was harmless. [Id. at 8].

On August 26, 2010, the Plaintiff presented for a consultative examination with Dr. Summers. [Tr. 247-50]. The Plaintiff reported that she suffered from diabetes and that despite treatment, she had problems with "numbness and tingling in both legs." [Tr. 247]. She related that she had difficulty standing and walking for more than 60 minutes continuously or more than six hours total in a single workday. [Id.]. Dr. Summers noted that the Plaintiff was evaluated by an unknown physician who diagnosed her with neuropathy. [Id.]. He also noted that the Plaintiff had been treated with medications with modest improvement. [Id.]. Upon examination, Dr. Summers found that the Plaintiff had no edema in her lower extremities, she had full range of motion, she ambulated normal without assistance, and could stand and walk on both of her heels and toes, perform a full squat, and stand on either leg singly. [Tr. 249]. Dr. Summers also noted that the Plaintiff had diminished sensation to light touch in both of her feet. [Id.]. In conclusion, Dr. Summers opined that based upon the Plaintiff's history and examination, it was reasonable to expect that the Plaintiff would have difficulty standing or walking greater than 50 minutes continuously or more than 6 hours total in a single workday. [Id.].

On September 13, 2010, Dr. Fletcher completed a form entitled "Physical Residual

8

Functional Capacity Assessment," wherein he responded to variety of short answer and multiple-choice questions regarding the Plaintiff's physical abilities and limitations. [Tr. 251-59]. With specific regard to the Plaintiff's ability to stand and sit, Dr. Fletcher opined that she could stand, walk, and/or sit for six hours in an eight-hour workday, but must periodically alternate between sitting and standing to relieve pain and discomfort, and that she has limited ability to push and/or pull in her lower extremities. [Tr. 252]. Dr. Fletcher explained that the Plaintiff could stand and walk for 50 minutes but would then need to sit for 10 minutes. [Id.]. Dr. Fletcher's opinion appears to be based largely on the Plaintiff's statements and Dr. Summers' examination. [Tr. 258].

In the disability determination, the ALJ stated the following regarding both opinions:

> The claimant was consultatively evaluated on August 26, 2010, by Jeffrey Summers, M.D. Physical examination revealed diminished sensation to light touch in both feet but no other findings of end-organ damage from diabetes. Dr. Summers opined that the claimant would have difficulty standing and walking more than six hours total in a single work day, maintains full and unrestricted use of upper extremities, ability to work from a seated position and operate hand controls up to eight hours in an eight-hour workday (Exhibit 6 F).
>
> . . .
>
> State agency physician reviewed the claimant's records in September 2010. State agency physician essentially opined that the claimant was capable of performing medium exertion, can occasionally climb and balance and frequently stoop, kneel, crouch and crawl.
>
> . . .
>
> The only physical functional assessments of the claimant in the record are those of reviewing state agency physician who opined that the claimant was capable of a range of medium exertion. Said assessment more than accommodates the objective and clinical evidence of record and is entirely consistent with the claimant's

9

reported daily activities, outlined above.

[Tr. 17, 20].

Social Security Ruling 96-6p states, "[ALJs] and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." 1996 WL 374180, at *1 (July 2, 1996); see also 20 C.F.R. § 404.1527(e)(ii) (stating that unless controlling weight is assigned to a treating source's opinion, the ALJ must explain the weight given to the opinion of a state agency medical or psychological consultant or other program physician, psychologist, or other medical specialist). The appropriate weight to be given to examining and non-examining sources is determined upon the following factors: supportability, consistency with the record as a whole, whether the opinion is from a specialist, and other factors which support or contradict an opinion. 20 C.F.R §§ 404.1527(c)(3)-(6). With specific regard to non-examining sources, such sources will be "evaluate[d by] the degree to which these opinions consider all of the pertinent evidence" in a plaintiff's claim, "including opinions of . . . other examining sources." § 404.1527(c)(3).

In the instant case, the Court finds the ALJ failed to expressly state the weight assigned to either Drs. Summers' or Fletcher's opinion as required by the regulations. However, the Court finds that the error was harmless for two reasons. First, the ALJ appeared to adopt Dr. Fletcher's opinion when the ALJ noted that "[s]aid assessment more than accommodates the objective and clinical evidence of record and is entirely consistent with the claimant's reported daily activities." [Tr. 20]. Thus, the ALJ clearly accepted in whole Dr. Fletcher's opinion, and thus, the ALJ's statement is akin to an assignment of significant weight to the opinion. Second, although the ALJ did not expound upon Dr. Summers' consultative examination other than to

10

state what his findings were, because Dr. Fletcher's opinion relied on and is consistent with Dr. Summers' findings, the Court finds that the ALJ likewise adopted Dr. Summers' opinion to the extent that it mirrored Dr. Fletcher's opinion.

The ALJ's failure to address the sit/stand option as opined by both doctors, however, was not harmless. While the ALJ adopted Dr. Fletcher's opinion in its entirety, she ignored the Plaintiff's limitation of needing to sit down for 10 minutes after continuously standing for 50 minutes. If the ALJ deliberately declined to adopt a sit/stand limitation but agreed with the rest of Dr. Fletcher's opinion, the ALJ had a duty to explain as much. See Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2,1996) ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence" and also stating that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted"). On the other hand, the ALJ could have simply overlooked this particular limitation. However, Social Security Ruling 96-5p explains that "that medical source statements may actually comprise separate medical opinions regarding diverse physical and mental functions, such as walking, lifting, seeing, and remembering instructions, and that it may be necessary to decide whether to adopt or not adopt *each one*." 1996 WL 374183, at *4 (July 2, 1996) (emphasis added).

Either way, the omission is significant because the need to alternate between siting and standing affects the number of jobs a claimant is capable of performing. As explained by the Court of Appeals for the Sixth Circuit, "[t]he need for a sit/stand option generally requires the testimony of a vocational expert because it precludes a wide range of work at any given exertional level." Hagins v. Comm'r of Soc. Sec., 62 F. App'x. 84, 85 (6th Cir. Mar. 26, 2003).

11

Because it is unclear whether the Plaintiff requires a sit/stand option, the ALJ's reliance on the Medial-Vocational Guidelines at step five of the sequential evaluation in determining that a significant number of jobs existed in the national economy that the Plaintiff was capable of performing [Tr. 21] is not supported by substantial evidence.

The Court acknowledges the Commissioner's arguments as to the shortcoming and inconsistencies alleged regarding Dr. Summers' opinion and Dr. Fletcher's faulty reliance on it, and it may well be that the ALJ will agree with this position. If so, the Court can then evaluate the ALJ's reasoning. However, the Court can neither substitute its own reasoning nor the Commissioner's proposed arguments for the ALJ's ambiguous action of adopting a medical opinion that contradicts the Plaintiff's RFC. See Hyatt Corp. v. N.L.R.B., 939 F.2d 361, 367 (6th Cir. 1991) (rejecting appellate counsel's *post hoc* rationalization for an agency's decision where no such explanation was enunciated in the decision, and holding that "[c]ourts are not at liberty to speculate on the basis of an administrative agency's order") (citations omitted). Without any discussion by the ALJ regarding a sit/stand option, the Court is precluded from conducting a meaningful review of the disability determination. See Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009) (holding that "the ALJ's failure to follow the Agency's procedural rule does not qualify as harmless error where we cannot engage in 'meaningful review' of the ALJ's decision") (quoting Wilson, 378 F.3d at 544).

Accordingly, the Plaintiff's allegation of error in this regard is well-taken and the Court will recommend that this case be remanded to the ALJ to: (1) state the weight assigned to the opinions of Drs. Summers and Fletcher; (2) explain whether the Plaintiff requires a sit/stand option and the reason for such finding; and (3) if such limitation is found credible, acquire testimony from a vocational expert regarding the implications as to the occupational base.

### B. Mental Impairment

The Plaintiff next argues that the ALJ's finding that she does not have a mental impairment lacks substantial evidence. [Doc. 12 at 10]. The Plaintiff maintains that the ALJ failed to specify the degree of limitation required by 20 C.F.R. § 404.1520a(c), -(e) regarding her ability to interact socially or concentrate, persist, and keep pace. [Id. at 11]. Because the ALJ assigned no mental limitations in regard to the Plaintiff's RFC, the Plaintiff maintains that "it should be safe to assume that the ALJ found that Plaintiff had no mental limitations whatsoever." [Id.]. The Plaintiff proceeds in her argument by asserting that the medical evidence of record, in conjunction with the inconsistencies noted in the ALJ's decision, demonstrates that the Plaintiff experienced some mental limitations contrary to the ALJ's findings. [Id. at 12-16].

The Commissioner concedes that the ALJ did not follow the requirements of 20 C.F.R. § 404.1520a because she failed to specify the degree of limitation in the two functional areas challenged by the Plaintiff. [Doc. 16 at 10]. However, the Commissioner argues that the omission was harmless because the ALJ determined that the Plaintiff had other severe impairments and proceeded with the sequential evaluation process, addressing the Plaintiff's alleged mental impairment at each step. [Id.]. Regardless of the omission, the Commissioner contends that the Plaintiff failed to establish a severe mental impairment. [Id. at 10-14].

As an initial matter, the Court agrees with the parties that the ALJ erred at step two of the sequential evaluation because she did not properly apply the "special technique" required by 20 C.F.R. 404.1520a, which provides instructions for evaluating a mental impairment. Specifically, the ALJ did not rate the degree of limitation the Plaintiff experienced in regard to four functional areas known as the "B criteria:" social functioning, concentration, persistence, or pace, and episodes of decompensation. See 20 C.R.F. § 404.1520a(c)(3); Rabbers v. Comm'r Soc. Sec.

13

Admin., 582 F.3d 647, 653 (6th Cir. 2009). The regulations require that an ALJ use a rating of "none, mild, moderate, marked, [or] extreme" in regard to the first three functional areas and a rating of "none, one or two, three, four or more" in the last functional area. § 404.1520a(c)(4). The Court finds that the ALJ erred because she did not specify "the degree of limitation in each of the functional areas" in her written decision. See § 404.1520a(e)(4). In the decision, while the ALJ discussed to some degree all four functional areas, she concluded that the Plaintiff did not have "marked" limitations in any of the areas, but failed to specify the degree of limitation as required by § 404.1520a(c)(3), -(e)(4).

However, the Court agrees with the Commissioner that the failure to assign a specific rating to each functional area was harmless because "the [P]laintiff was [not] prejudiced on the merits by the ALJ's failure to comply with 20 C.F.R. § 404.1520a." Rabbers, 852 F.3d at 655. This is so because the ALJ continued the sequential evaluation process, considering the Plaintiff's alleged mental impairment at each subsequent step. See McGlothin v. Comm'r of Soc. Sec., 299 F. App'x 516, 522 (6th Cir. Oct. 31, 2008) (noting it was "legally irrelevant" that ALJ found some impairments not severe at step two because the ALJ found the claimant had other severe impairments and completed the evaluation process); Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987) ("Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."). Here, despite the ALJ's failure to rate the B criteria, the ALJ properly proceeded by considering the effect the Plaintiff's alleged mental impairment had on her RFC. See White v. Comm'r of Soc. Sec., 312 F. App'x 779, 787 (6th Cir. Feb. 24, 2009) ("Once one

14

severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would not be severe."). Moreover, the Plaintiff does not explicitly claim she was prejudiced by the ALJ's faulty step two analysis, but rather that the ALJ's overall finding that she did not suffer any mental limitations was not supported by substantial evidence.

The Court's discussion now turns to whether substantial evidence supports the ALJ's finding that the Plaintiff had no mental limitations affecting her ability to work. The Court finds the issue to be a closer questions, but ultimately agrees with the Plaintiff. The brevity of the ALJ's discussion regarding eight months of medical records in which the Plaintiff received mental treatment and the inconsistencies notated throughout the ALJ's decision presents conflicts in the evidence the Court is not permitted to resolve. See Walters, 127 F.3d at 528.

The ALJ's assessment of the effect of the Plaintiff's alleged mental impairment upon her RFC is as follows:

> Similarly, the claimant has required only conservative treatment for mental health concerns including depression and anxiety. The claimant has never required inpatient treatment for her conditions and treatment notes from Peninsula Mental Health are sketchy at best. The claimant has many missed appointments. She has required only conservative treatment in the form of therapy and psychotropic medications with good control of her symptoms.

[Tr. 20].

The Court finds no support for a finding that the Plaintiff's treatment notes from Peninsula Mental Health are "sketchy at best." At the time of the hearing, the Plaintiff had been receiving treatment from Peninsula Mental Health for eight months for post-traumatic stress disorder, alcohol abuse, mood disorder, and anxiety. [Tr. 386, 396]. While the Court agrees that the Plaintiff missed a number of appointments throughout this time period, she was still seen by the facility on a monthly to bi-weekly basis. Her mood was consistently noted as moderate [Tr.

15

331, 340-41, 444, 446] with a Global Assessment of Functioning ("GAF") score ranging from 45-55, indicating moderate to severe symptoms.[1] [Tr. 369, 379, 435, 440]. Moreover, in November 2010, treatment notes stated that the Plaintiff lacked potential to return work. [Tr. 381].

The fact that the Plaintiff never received more than outpatient therapy and medication for her symptoms is insufficient in this case for a finding that the Plaintiff experienced no mental limitations. First, the ALJ does not cite which treatment notes indicate "good control" of the Plaintiff's symptoms. In fact, there are many instances where the Plaintiff's medications and/or dosages were changed because it was not controlling her symptoms. [Tr. 315, 362, 369, 372,375, 392, 396, 438]. For example, in November 2010, the Plaintiff reported that she had been on Prozac and also tried Valium and Trazadone, which she was unable to tolerate. [Tr. 392-93]. During two separate visits in December 2010, the Plaintiff reported improvement in her anxiety and that some trauma symptoms that she had been experiencing had significantly decreased. [Tr. 375-77]. The Plaintiff appeared to be enjoying the benefits of her medication. [Tr. 375, 377]. However, the following month the Plaintiff's medication was changed because she was irritable and not sleeping. [Tr. 372]. In February 2011, her medication was changed again from Zoloft to Buspar for anxiety as she continued to be a "nervous wreck" and she was taken off of Remeron and Vistaril and switched to Ambien for continued trouble sleeping. [Tr. 369].

Second, the ALJ's misstatement of facts also calls into question the supportability of her findings. At step one of the sequential evaluation, the ALJ noted that the Plaintiff's most recent

---

[1] A score of 41-50 indicates "[s]erious symptoms . . . or any serious impairment in social, occupational, or school functioning[,]" while a score of 51-60 indicates "moderate symptoms . . . or moderate difficulty in school, occupational, or school functioning." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34, 4th ed. (revised) 2000) (bold font and capitalization omitted).

GAF score was 55. [Tr. 17]. As pointed out by the Plaintiff, however, the most recent treatment notes from Peninsula Mental Health are dated July 2011, and reveal a GAF score of 50 [Tr. 423], indicative of serious symptoms. The month before, the Plaintiff's GAF score was 45, likewise indicating serious symptoms. [Tr. 428]. In addition, at step two, the ALJ cited to a psychological consultative examination which is nowhere in the record, a point of contention conceded by the Commissioner. The ALJ noted in regard to the Plaintiff's ability to concentrate, persist, or keep pace that that the Plaintiff "was able to complete all the testing procedures during the psychological consultative examination." [Tr. 18]. However, the record is void of any such testing as well as a psychological examination for that matter.

Because the ALJ did not accurately state the evidence to support her findings, the evidence leaves too much room for interpretation by the Court as to whether the Plaintiff experiences any mental limitations. Accordingly, the Plaintiff's allegation of error is well-taken and the Court will recommend remand on this issue as well in order for the ALJ to: (1) obtain a consultative mental examination to assess the severity and extent, if any, of a mental impairment or limitation; and (2) explain whether the Plaintiff does or does not have a mental impairment or limitation and the reasons for such findings.

### C. Development of the Record

The Plaintiff's last contention of error is that the ALJ failed to develop the record as required by 42 U.S.C. § 421(h) in regard to the Plaintiff's mental impairment. [Doc. 12 at 16]. The Plaintiff asserts that under the particular circumstances presented in this case, the ALJ had a duty to further develop the record by acquiring a psychological consultation. [Id. at 17]. Because the Court has found that substantial evidence does not support the ALJ's finding that the Plaintiff does not have any mental limitations and has recommended that upon remand the ALJ

17

reevaluate the medical evidence of record by obtaining a consultative mental examination, the Court finds that it need not address the merits of this last issue.

## VI. CONCLUSION

Therefore, it is hereby **RECOMMENDED**[2] that Plaintiff's Motion for Judgment on the Pleadings [**Doc. 11**] be **GRANTED in part** and the Commissioner's Motion for Summary Judgment [**Doc. 15**] be **DENIED**. The Court recommends that this case be remanded to the ALJ to:

> (1) State the weight assigned to the opinions of Drs. Summers and Fletcher;
>
> (2) Explain whether the Plaintiff requires a sit/stand option and the reason for such finding;
>
> (3) If a sit/stand requirement is found to be credible, acquire testimony from a vocational expert regarding the implications as to the occupational base;
>
> (4) Obtain a consultative mental examination to assess the severity and extent, if any, of the Plaintiff's alleged mental impairment or limitation; and
>
> (5) Explain whether the Plaintiff does or does not have a mental impairment or limitation and the reasons for such findings.

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).